last case of today still this morning we have four minutes left United States v Ottaviano numbers 11-45-53 and 13-11-19 Messrs. Berman and Coyne still good morning your honor may it please the court my name is Mark Berman I represent Ronald Ottaviano who's a defendant and appellant in this case and I'm gonna go ahead you want time for rebuttal I'm gonna cut right to the the main issue here assuming that the judge here asked questions that crossed the line and that the judge became in effect a you know more of even with that assumption harmless error in light of all of the evidence of guilt of Mr. Ottaviano and I could run through a host of things that it appears that there is no way that I can see that this could go back for 10 retrials and he has no chance of winning so your honor I don't think the court can reach that conclusion that okay what what I mean let's assume that the judge he questioned the veracity the truth-telling ability of Mr. Ottaviano and juries give a lot of credence to things that judges say and let's say that was a bad thing but does does that so taint the trial that these other items of evidence should be disregarded yeah so the answer is yes it does and and here's why Ottaviano's defense ultimately rested essentially on his own credibility he obviously had a constitutional right to remain silent and he opted to give up that right to sit in front of the jury to look them in the eye and explain to them but let's just take it one by one let's go with the pure trust organizations the government introduced an actual binder that was given to customers and it contained a quote secret section in the back that told customers they just need to make sure that all of the expenditures of the accounts appear to be the decisions of the trustees the trustees would approve whatever expenditures were requested secondly the IRS special agent provided expert testimony that that the PTOs that Ottaviano was marketing and selling were sham trusts for tax purposes you had an undercover agent testify about buying a PTO directly from Ottaviano and recording phone calls with him where Ottaviano described how the trust would be used to evade taxes where Ottaviano claimed that he had they represented that he had graduated from law school they had transcripts of Ottaviano's meetings with the IRS regarding tax deficiency notices the IRS told him the trusts were taxable and during one of those meetings he acknowledged that if the taxpayer controlled the trust he had he had to pay taxes on the income that in of itself forgetting what the judge did here I mean the judge got upset with you know and he may have asked a few questions too many but just on the PTOs and we'll get to the the the BICs in a minute how do I get around how do I say that's not harmless error here so um here we go again it's not mine that that that is a lifeline see so um no I'm kidding so um whoever is come just turn it off um so hang on whose phone is it oh you're like the rest of us yeah I usually can put it on vibrate I wish I could yeah well there's new phones is that that the uh iphone i5 I pushed every button and tried a combination no problem no problem no problem at all so we've all been there your honor first of all I don't I don't think one could put to the side the judge's excessive questioning and I'll come back to that because I want to finish answering the court's question and and the answer is yes there was inculpatory evidence in this case as there is in any other case in this case in every case brought by the U.S. attorney's office the conviction rate is above of 90 percent in just in cases that go to trial um but the fact is is that the the right to present the defense means something and the defense in this case was Mr. Ottaviano sitting in front of the jury and saying listen I get that there that the government's presented evidence but I'm telling you that I did not intend uh to break the law that I honestly believed that what I was doing was both lawful and effective and notwithstanding that evidence you should believe me that I'm a I'm a truth teller that's isn't your point essentially that Mr. Ottaviano's own testimony is so basic and fundamental that that the harassment from the questioning struck at the heart of your defense it's the most it's the most basic fundamental it's a criminal defendant taking his own life in his hands essentially and and trying to persuade his fellow citizens that notwithstanding that the government allegedly you think if if the judge here did not ask those questions do you think that they would have been omitted by the prosecutor I know that they were omitted by the prosecutor the way what happened I mean the fact that he had a he was trying to get into law school fraudulently that he had represented that he had that he had law credentials and he didn't I know that that you were admitted by by the prosecutor admitted admitted or omitted omitted judge martinez turns out I guess if you're the prosecutor you'd be covered for you don't have to you don't have to repeat them but the point is that these are so fundamental and so basic you the prosecutor it seems would have asked questions along those lines well except that judge martinez cross-examination of Otaviano began on direct examination continued after the government had finished its cross-examination and then resumed on redirect examination so when when the when the court asks whether the government would have asked the questions one can read the transcript and see the questions that the government asked and then the judge martinez came back and hammered him and hammered him again and hammered him on other areas that the government perhaps had approached in a different way and that's simply not the role of a trial judge to become a second prosecutor I mean that's the language in this court's cases over and over again the judge cannot be second prosecutor the judge should not even approach the appearance you're you're absolutely right the point is would it make a difference and the answer is if you're asking me would Otaviano had been acquitted I have no I no way to know whether he would have been acquitted I know that a jury could have believed his testimony that he that the issue was intent that he did not intend to break the law and he had the opportunity he had the right even even though he had fraudulently tried to get into law school even though he had never filed a tax return I mean I could go on I mean the amount of evidence I gave just with regards to the PTOs and not with respect to the BICs I mean it's a mountain of evidence the there's the question as to whether a jury could have convicted is not the same opposite side of the same coin as had could he have been acquitted or even whether the jury could have been hung a single juror could have believed Otaviano that you know what I think this his testimony his own testimony gives rise to reasonable doubt and that the government has not satisfied its burden and he and more significantly as a as a institutional matter structural matter he had a constitutional right to present that defense the you should believe me defense without having two prosecutors impeaching his his credibility what's our standard review of this question what do you say our standard review should be so I would suggest that the court's standard of review is well in essence it's it's plenary the case law doesn't say in so many words but the question becomes the one that the government itself asked in United States versus Kennedy which involved Judge Martini just a year ago where the government asked this um judge Judge Martini because he had asked questions that the government uh felt suggested uh an appearance of partiality and that standard is could a reasonable observer detect distrust and disfavor of defendant Otaviano in Judge Martini's questioning of him that's the that's the standard that the government asked for and this court applied in in Kennedy and if it's good enough for the government then it's good enough for the defendant you think that Mr. Otaviano properly preserved his complaint so that it takes it out of the plenary review and the answer the answer is yes first of all he he raised the issue by moving for a mistrial outside the presence of the jury which was an appropriate way to resolve the issue when did he do it he did it after his testimony testimony ended and the next morning now did he do it contemporaneously he did it he did it both after it ended and the next morning the next one the next morning the next morning he did it the next morning if he were counseled he'd be too late because the rule says that the first available opportunity which would have been at the conclusion that day so we we would need to give him which he might be entitled to as a pro se litigant a little bit of latitude that we would not give a counsel defendant do you agree with that well i'm not 100 sure that an attorney would have been too late but i do think that the court has to view that objection in in context and the context is is that otaviano was really in an untenable position on the one hand he had been forced to proceed uh with standby counsel for purposes of his own direct examination which he which he didn't want but judge martini for reasons unexplained required him to proceed uh with standby counsel working off a script that standby counsel did nothing not at the sidebar conference from which otavio was excluded and not during the direct examination and by all was the attorney um and in fact all of the attorneys stood mute i mean that the judge martini's cross-examination cross-examination of this witness goes on and on and on and otaviano was not the only attorney in this courtroom the government was in the attorney was in the courtroom there were other defense counsel in the courtroom not a single one had the intestinal fortitude to say hey judge you're going overboard here but this isn't this is to get back to judge ambrose initial question of harmless error are you arguing that this case is not susceptible to harmless error analysis because what happened here is structural i think uh i'd like to be able to say that but i think the case law um to the two few categories that say that the case law suggests that that harmless error can be considered in the context of this claim as opposed to the sixth amendment claim having said that uh if one looks at the case law from this circuit in terms of the factors the certain factors become clear so for example the court has considered whether the the trial court's involvement was just isolated comments or whether um his involvement was extensive and persuasive whether his his questioning was to clarify an ambiguity or whether it was to emphasize the government's proof or to impeach the defendant's credibility well but those are questions about whether what he did was wrong right we're assuming what he did was wrong right but then we're in the in the difficult speculative land as you candidly acknowledged i think wisely and professionally i don't know what would happen but harmless error analysis always requires this court to go through that looking glass so to speak and try to determine whether it would make a difference right and what i'm saying is that those factors are also relevant to consideration as to whether the error was harmless and i'll just go through them and i'll explain why the court cases i've also looked to whether the comments were directed at an attorney or whether the questioning was directed at the defendant himself whether the comments were made outside the presence of the jury or in front of the jury whether the court's questioning was even-handed that he did the same thing for the government's witnesses or whether it was one-sided and partisan if you consider those factors which i've gathered from the case law in each one judge martini's involvement in this case fails his questioning was extensive and pervasive it emphasized the government's proof and impeached the defendant's credibility it was directed at the defendant himself it took place in front of the jury and it was one-sided and partisan and when all of those factors coalesce together i think it becomes much harder for the court to say um that the error that the error was harmless and in fact if one looks at the cases actually that's a very good place for us to turn the ask mr coin to respond to what you just said thank you your honor thank you good afternoon your honors may it please the court a usa mark coin on behalf of the united states if you could pick up these were the six seven points that were noted by mr burman in the harmlessness and i agree the appropriate place for this court to begin is to present to take assume that the questioning at least in its fatality was improper and it exceeded the judge's discretion under rule 614 we didn't defend that on that basis what we have defended was essentially harmlessness given the overwhelming evidence of guilt and i think i don't disagree with the factors that with with the relevance of factors that my very capable colleague has which include the length of the trial in this case three and a half weeks the amount of evidence against the defendant in which as this your honor has already indicated overwhelming evidence of guilt concerning this defendant including coming from his very own mouth even before he takes the stand even before he's making an opening statement in front of sorry after he's making his opening statement in front of the jury well before he takes a stand the government has already introduced evidence of this defendant on a tape recorded call among other things saying with respect to being able to post his delaware beach house as security to get out of to get out on bail we have his stamp harriet can stamp it and i'll swear in a stack of bibles that this profanity signed it that's coming from the defendant's own mouth played in front of the you have that so overwhelming evidence of guilt together with a very long trial you also have from our perspective and i think the key cases for for your honors to consider are walensky and baity i think that's where the court has in in the greatest detail dressed judicial uh questioning of this sort those cases both involve the same judge from the district of new jersey uh and in baity a total of three baity and in walensky a total of three different defendants raised essentially the same claim that in this particular case when the judge started doing it today how come no one i realize there's been some tension with this particular judge but uh from with your office but you would think you know your honor i'm going to get there i'm going to handle that i you know your honors i've been thinking about this case as you can imagine for quite some time on the brief mr burman's brief came in i think in early october of 2012 and i've had a long time to think about what i would have done could have done had i been in the shoes of my colleagues at trial i'd like to think although i can't say with absolute certainty that at that moment i would have been able to articulate the objection or at least to stand up and try to put a break on things and i would be wary of imposing upon prosecutors an absolute duty to do that i think we always in all prosecutors including this trial team are cognizant that their first and foremost duty is to see that justice is done irrespective of what at a trial it's not the verdict that matters what matters is that justice is done but i don't honestly believe that these prosecutors should shirk that duty here i mean i think the problem we're dealing with is we have a pro se litigant in a very long trial the pro se has an absolute and this dovetails a little bit with the um one of the other claims that are being raised but um and i don't think that claim and if the court wants to address that claim i'll be happy to deal with it but first and foremost to the right of self-representation the core right the supreme court has emphasized mccaskill v wiggins is the right to control the presentation of your own case let's raise your voice just a tad just raise your voice just sorry is the right is the is the right the core right is to control the presentation of your case in front of the jury and so i think any council when a pro se is involved in court in front of the jurist jury has to be very careful about doing anything that isn't with the pro se's consent because then you start then you then you're in substantial tension with what the supreme court says is the core right of self-representation that being said i'll be blunt i wish the questioning didn't happen i certainly wish that the judge had not asked questions after my colleague concluded his cross-examination and the judge didn't ask further questions after we direct but i think when you view those questions in their totality and i think it all told those questions at least the portions that are quoted by my colleague in his opening brief and sort of related questioning that's about 20 pages of trial transcript and i think those 20 pages are too much it's just in my view the questioning should have been far less than that i think all of us can agree on that but when you when you compare you let's just excise all of those questions out of it and you're left with a cross-examination by a prosecutor that was like shooting fish in a barrel i'm absolutely like shooting fish in a barrel this was sort of easy target after easy target after easy target and then on top of the cross-examination by the prosecutor you have atavia not only ataviana's own words that are damning that are introduced against him at trial during the prosecution's case in chief you have ataviano's own statements during the course of the trial for example in cross-examining miss mcdermott the employee who became sort of a very important government witness to explain what was going on in this in this workshop of fraud uh he tried to contradict her her testimony that ataviano had ordered server the real server of the of the company he moved up into a hot attic law space and he tried to get her to agree with him that that wasn't the idea of mr ataviano to hide the server from law enforcement should they ever come a noggin but rather it was the idea of an it professional on staff to better improve signal and miss mcdermott obviously disputed that i guess i guess the point in one sense we're saying the next time this happens i mean you wouldn't be here if this if this were shooting fish in a barrel and we didn't have things like the questioning that took place here you wouldn't be here today absolutely your honor what what will be what do you do the next time i know i think with the benefit of having a year to think about this i think what i would have done is this i'm not sure if the signal would have been reached during the course of the direct because the judge is questioning during direct after there's the resumption of the of the direct testimony after the let's call it sidebar but the jury's out of the room so really it's a it's a recess where there's the equivalent of a 104 hearing regarding the authenticity and admissibility of this letter that was supposedly sent to secretary at least there one of the council did say hey i think not for nothing he should be here and the judge then to the judge's credit and i don't want to get too sidetracked on that but i guess the judge got him back in correct and then it's clear that at the end of the day mr ottavio prevailed on what he wanted to the extent and so i can't think anybody could say that this is really an infringement a fundamental infringement on the on the right of self-representation because he got the exhibit in that he wanted to get in he testified about that exhibit wouldn't your response be your honor if i may uh would you permit the government to pursue that line of questioning i think it you certainly could have after you stepped down and said i'm done with the witness and judge has additional questions you certainly could have said that and i think again with the benefit of hindsight and i want to i must confess i've only tried a couple of criminal cases i've been principally an appellate lawyer what i do have is the benefit of looking at an awful lot of transcripts and acknowledging that this is um at least in my experience this is this level of judicial questioning is not something that i've often confronted and and so yes a prosecutor could have said that simply i'll some point i would like to think and certainly armed with what we saw here that i and my colleagues would find a way to just simply ask for a short recess and i think what i probably would have said had there been a short recess is your honor we recognize that you have the absolute right to ask questions and to oversee and police the search for truth we recognize that we're not disputing that we would just ask that you review the Beatty and Walensky decisions because i think those decisions made pretty clear that the kinds of questioning that was going on here were they were improper we're not say what's that i think then i would have handed the decisions up and i would have had them with me and everyone in my office is far more sensitive to the is i mean we always were sensitive to those decisions but i think you know it's easy for appellate lawyers to rattle off precedent not necessarily all criminal um criminal practitioners are as versed in the appellate precedent as we are i mean that's why we have appellate lawyers at my office but so i think this is absolutely regrettable and i do wish i i fervently wish that we had had the wherewithal at the time to try to do more to stop it but all that being said you have to view this and this goes back to the judge ambrose first question which is assess the factors that your colleague has pointed out those are some of the factors but there are others the length of the trial is certainly a factor this court canon should consider it was a factor that was what was in part dispositive in Beatty and let me talk a little bit about Beatty if if i can have your indulgence let me ask you before you i mean Mr. Ottaviano made his formal objection to the line of questioning the next morning he did okay to one aspect of the line of questioning not to all of it the one perhaps the one that accused him of basically hinted that he was lying the one that was most defrauding defrauding the law school yeah the one that was most objectionable with a pro se defendant looking at you know federal rule of evidence 614 b wasn't that timely enough i respectfully i don't think it was and i i will i will point in a related context to judge ambrose decision for the circuit in the united states bureaus which involves waiver a far stricter preservation rule in the context of suppression arguments where a pro se litigant failed to raise on a timely basis the suppression argument event was being raised on appeal and the this court's opinion read the rose has offered a reason why he did not raise the issues before his suppression hearing he has offered no explanation other than that he was proceeding pro se why he did not raise the issues after the hearing but prior to this appeal in this context we conclude that rose has not shown good cause for his failure to raise these suppression issues to the district court that's usv rose 538 175 185 i believe in 186 and that's in a context suppression where there's an absolute waiver rule it's not just forfeiture it's waiver here we're saying it's forfeiture that should apply the standard here should be plain air and i think there's a good reason for that a couple things yes he's a pro se but he certainly had the wherewithal to object to the forms of questions he objected the forms of questions posed by prosecutors during the next morning but i mean nothing happened in the interim i mean how frequently does count i mean i i recognize you you're appellate counsel but with significant frequency during the course of a trial counsel will come in and say ron we'd like to have a little conference yesterday such and such happened uh having thought about it later in the day and overnight i'd like to put on the representing himself comes in the next morning and first thing first thing and says what he said about the line of questioning i mean i don't really think it's timely for octavia no but i would say it would be pretty close to rule 614 b even if it was counsel with 614 b though says it's the next available opportunity and there were intervening recesses there was even an my colleagues cross spanned both the morning session and the afternoon session there wasn't a break there there's a lot of wiggle room in the two words available and opportunity i i understand that and i appreciate that your honor even if your honors believe that the issue was sufficiently preserved whether he was pro se or whether it would be sufficiently preserved even if he was counseled and i i respectfully i i think more needs to be done in part because the reason for the the prompt objection requirement yes you don't have to raise it in front of the jury because of the difficulties that could pose for anybody but the need for a prompt objection is so that the judge can take appropriate timely curative measures and the judge you know by the the next the following morning by my counsel's own argument any curative measures that could be taken the time had already gone the only choice at that point was mistrial and i think the purpose of rule 614 is to put litigants on notice that they have reservations that they have issues with the nature of the questions that a judge is posing that they've got to raise them sufficiently timely so the judge can do something about it before damage or more damage is done but even assuming that this is a preserved claim of error and even assuming it's not just simply the ordinary didn't substantially contribute to the verdict but rather even the most stringent form of harmless error review which is harmless beyond reasonable doubt our position is the errors here the abuse of discretion or the the laughs of judgment in posing these questions was still harmless beyond reasonable doubt in light of the absolutely utterly overwhelming evidence of guilt there's not a doubt in my mind judge amber as you said if this case were to be tried 10 times the outcome would be the same every single time i also think in judging whether this rose level depriving him of assuming there are no tax protesters on the jury assuming there are no tax protesters but i think we would do our best to try to weed them out as it was wadir actually designed to do that but putting that aside i think in judging whether there was a due process violation you have to look at or i would implore the court to look at the entirety of the judge's management of this trial in the words of of baity were aspects of the judge's trial management regrettable yes but when you compare what this judge did again say what the judge did in baity wherein baity from beginning to end it comes across at least from reading that opinion the judge engaged in an unrelenting attack on at least one of the defendants in his counsel mr baity this judge bent over backwards to issue trial subpoenas so that mr taviano could bring in 13 different defense witnesses from far-flung locations in the country who as it turned out offered marginally probative evidence if anything but nonetheless the judge did that the judge also not only cut short one trial day but then the next friday before the defense case begins uh basic counsel's court that day gives mr taviano that day off so he can better prepare for the presentation of his and also to ensure that he would comply with a discovery order that the judge had issued prior trial requiring uh setting the timetable for disclosure of defense exhibits and even when mr taviano flouted that and then produces on the stand the following wednesday a letter he claimed a copy of a letter he claims to have sent to the secretary of the treasury the judge ultimately lets that evidence in rather than keep it out which the judge could have because of the violation of the discovery order and so i think you have to judge what the judge you have to judge what the judge did here i think i think you made your point well thank you very much thank you your honor unless there are other questions i can address in my papers thank you now there's just just three very quick points um mr coin stated in his comments that what matters is that justice is done actually there's more than that the supreme court's made clear um that justice must act well must also satisfy the appearance of justice and appearances matter i do try criminal cases and particularly to juries appearances matter juries know that defense counsel is a higher gun they know that government counsel is a higher gun the district court judge sits above it all almost as a god to jurors so when you have a case like this one where the judge repeatedly excessively pervasively in a partisan fashion well in a three-week trial on this particular area well it was a fairly lengthy questioning but in the course of a three-week trial what portion of the of the time was actually spent on this objectionable questioning the most critical part of the trial the trial where the defendant got to speak to himself directly to the jury and explained this is why i'm not guilty but the issue was primarily relating to his attempts to get into law school and passing himself off as having a legal background is that right which went directly to the defendant's credibility and whether the jury should believe it i too i and if this case involved a credibility battle in such a way that the question for the jury to decide was did ottaviano commit the crime or did somebody else commit the crime and the government brings in cooperating witness smith and cooperating witness smith comes in and and then ottaviano takes the stand and says i didn't do it jones did it case is going back for a new trial we don't we don't know we cannot in that case say uh it's harmless error how do you get around the fact here that the credibility isn't ottaviano saying i didn't do it as i read the record now tell me if i'm misinterpreting the record as i see the record ottaviano saying oh i i didn't intend to violate any laws and that is countermanded with ottaviano on a tape talking about violating the law and copious amounts of documentary evidence and other witness testimony talking about exactly how he violated the law so i'm not sure you have that sort of conflict like the conflict that you would have in the hypothetical i presented so why am i okay so respectfully i think your your honor is wrong because your honor presented one type of scenario where credibility is at issue and this is another scenario where credibility is an issue because in white collar cases it comes down to intent and the defendant by taking the stand put that issue squarely in the jury's lap to say you should believe me and that's why district court's cross examination on the issue of credibility is so devastating and and critical to to this appeal because that was ottaviano's defense sure it was a three-week trial but ottaviano's defense hinged on that on that um on that period of time where he was presenting his case through direct examination and where ultimately he was cross-examined repeatedly by the district court and i know um several of your honors have written not for public publication opinions on this issue and and if you look at those you those are cases involving you know there were a handful of questions there were brief comments that's not this case and where the um district court judge's uh excessive involvement in questioning the jury um there are cases where we said the district judge erred or those cases where we said the district judge's limited questioning was not a violation it's it's it's even um those those are cases where where the court held um that um that limited questioning does not constitute a violation right well here we're giving you the violation yeah but your adversary is giving you the law sure sure but if but if if if the court goes back and looks at bd if i remember correctly there were two defendants in bd one where there wasn't a violation one there where there was or maybe it's united states versus noble i may have them wrong if you look at the second circuit's case in missilly which deals with this issue as to when when a defendant puts his credibility to issue whether it can constitute harmless error where the question is excessive and i would urge the court to go look at that cases this is a different case i would agree this is a different case if the defendant does not testify and judge martini's examination of the was limited to the defense witnesses which is something we haven't even really discussed at issue then that that wasn't preserved though we know that right but i'm saying this all it's all it's an issue is is the judge's questioning of octavian right but that would be a different that would be a different truly different case because then the defendant's witness the defendant's testimony bang the podium i apologize the defendant's credibility would not would not be at issue but once the defendant takes the stand it transforms the entire case he has a constitutional right to present his own the rule of law just so i'm clear the rule of law you want us to establish is that in a case where the defendant's credibility is at issue forget how it's defined how why it's an issue but it is at issue that it's structural error for the judge to ask inappropriate questions here's the truthful answer that i would love for the court to hold that but here's what here's what i think the right decision is in this case where the district court judge's questioning goes on and on and on on direct examination on cross examination on redirect examination with where it's directed at the defendant himself where it became clear that the district court judge's own skepticism was was communicated to the jury that at least in this to support as the supreme court says that justice has to satisfy an appearance of justice that this court cannot let that conviction stand whether it takes another three weeks to try this defendant or not that is not appropriate and i'll finish with this your honor asked an earlier attorney if he were writing the opinion how he'd write the opinion if i were writing so she would write the opinion shake you're right if um i would include all those pages from my brief and let a reasonable lay person read read the page after page it would take up three or four pages of fed third whatever up there um and um and i don't believe a reasonable observer reading that testimony could think that this defendant got a fair trial and that's ultimately what matters thank you thank you mr brim and thank you mr coin really thanks to both counsel for very well presented arguments we'll take a matter of